# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**SANDRA S. ROBINSON,**

       Plaintiff,

      **-vs-**                **Case No. 15-C-1214**

**GATEWAY TECHNICAL COLLEGE and
RAYMOND KOUKARI, Jr.,**

       Defendants.

---

## DECISION AND ORDER

---

Sandra Robinson was fired after an almost two-year stint as a Networking Instructor at the Racine campus of Gateway Technical College. Robinson brings claims against Gateway for violation of Title II of the Americans with Disabilities Act; against her direct supervisor, Raymond Koukari, for intentional infliction of emotional distress; and against Gateway and Koukari for negligent infliction of emotional distress. The defendants move to dismiss the state law claims.

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the facts alleged in the complaint as true, the Court need not ignore

allegations that establish "an impenetrable defense to [the plaintiff's] claims." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). In other words, a plaintiff can plead herself out of court, which is what Robinson did with respect to her state law claims.

Robinson was hired in September 2012. On or about November 1, 2013, Koukari tasked Robinson with additional job responsibilities, including, but not limited to: course development and accreditation, in spite of knowing that Robinson was not qualified to seek accreditation according to Gateway's handbook; laying-out and designing a room for approximately $385,000 worth of equipment; and documenting activity and holding other employees accountable. Complaint, ¶¶ 16-17. Robinson suffered from stress and anxiety due to the assignment of these additional duties. She gained weight, became diabetic, had trouble sleeping, and suffered from panic attacks. At her physician's recommendation, Robinson requested leave under the Family Medical Leave Act as a reasonable accommodation under the ADA for Robinson to continue performing the essential functions of her job as a Networking Instructor. On July 25, 2014, Gateway terminated Robinson's employment. Robinson alleges that she was fired so the defendants could avoid dealing with her accommodation request. Complaint, ¶ 23.

- 2 -

Defendants argue that Robinson's state law claims are barred by the exclusive remedy provision in Wisconsin's Worker's Compensation Act. Wis. Stat. § 102.03(2). Wisconsin courts have held that claims for intentional and negligent infliction of emotional distress are barred by the Act, so long as the injury arises out of and occurs in the course of the employee's employment. *See Jenson v. Empl. Mut. Cas. Co.*, 468 N.W.2d 1 (Wis. 1991) (IIED claim barred); *Weiss v. City of Milwaukee*, 559 N.W.2d 588 (Wis. 1997) (NIED claim barred). Robinson alleges that her injuries were caused by her workplace interactions with Boukhari. Thus, her state law claims are barred by the WCA's exclusivity provision.

Robinson argues that the WCA does not preclude her claims because injuries caused by the intentional conduct of an employer are not accidental under the WCA. *See* Wis. Stat. § 102.03(1)(e) (claim is subject to WCA if the "accident or disease causing injury arises out of the employment"); Wis. Stat. § 102.01(2)(c) (defining "injury" as "mental or physical harm to an employee caused by accident or disease"). Robinson relies on a court of appeals case which held that "where an employer injures an employee through his or her intentional conduct, the injury is not an 'accident' under the WCA, at least to the extent that such intentional conduct involves sexual harassment." *Lentz v. Young*, 536

- 3 -

N.W.2d 451, 457 (Wis. Ct. App. 1995). As an initial matter, *Lentz* emphasized that its holding was limited to sexual harassment. *See id.* at 458 ("we conclude that an employer's intentional sexual harassment of an employee is not an 'accident' under the WCA"). Moreover, courts have recognized that the scenario in *Lentz* is "unique because the offender was a sole proprieter, and therefore the employer." *Hibben v. Nardone*, 137 F.3d 480, 484 (7th Cir. 1998).[1] As in *Hibben*, and contrary to *Lentz*, the tort alleged by Robinson was committed by her co-employee, not her employer. *Id.* ("Here TLC, not Nardone, is clearly the employer, ... . [B]ecause Nardone was a co-employee, *Jenson* controls and the emotional distress Nardone caused is covered exclusively by the WCA"); *see also Peterson v. Arlington Hosp. Staffing, Inc.*, 689 N.W.2d 61, 66 (Wis. Ct. App. 2004) ("The *Hibben* court's conclusion is logical. *Lentz* presented a unique situation because the offender was a sole proprietor, and therefore, the employer. Our holding simply conveyed our concern that a sole proprietor would be able to use the WCA as a shield to protect himself or herself from liability for intentional acts against an employee. This concern, however, is

---

[1] *Hibben* also questioned *Lentz*'s public policy rationale in the first instance. "The problem with *Lentz*'s public policy argument is that the Wisconsin Supreme Court's analyses ... simply provide no basis for us to expect it to create a public policy exception to exclusivity in the case of sexual harassment or emotional distress (or other common law torts for that matter)." 137 F.3d at 484.

- 4 -

not present when, as here and in *Hibben*, it is a coemployee who has committed the intentional tort").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1.  Defendants' motion to dismiss [ECF No. 7] is **GRANTED**;

2.  Pursuant to Federal Rule of Civil Procedure 16(b), a telephonic scheduling conference is scheduled for **March 15, 2016** at **9:30 a.m.** (Central Time). Please be available at that time. The Court will initiate the call.

3.  The purpose of the conference call is to establish a scheduling order which will limit the time to: (1) join other parties; (2) amend the pleadings; (3) complete discovery; and (4) file motions.

4.  The scheduling order may also: (1) modify the timing of disclosures under Rules 26(a) and 26(e)(1); (2) modify the extent of discovery; (3) provide for disclosure, discovery, or preservation of electronically stored information; (4) include any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced, including agreements reached under Federal Rule of Evidence 502; (5) direct that before moving for an order relating to discovery, the movant must request a conference with the

- 5 -

court; (6) set dates for pretrial conferences and for trial; and (7) include other appropriate matters.

5.     A schedule may be modified only for good cause and with the judge's consent.  Fed. R. Civ. P. 16(b)(4).

6.     The parties should be prepared to discuss the matters listed in Civil Local Rule 16(a)(1).  Please refer to Attachment A.  Special attention should also be given to Rule 26(f)(1), which requires the parties to conduct a settlement/discovery conference as soon as practicable and in any event at least twenty-one (21) days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).  The Rule 26(f) conference may be conducted by telephone.  Rule 26(f)(2) mandates that the parties, within fourteen (14) days after the conference, file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference. In addition to the matters specified in Rules 26(f)(2) and (3), the Court requests that the proposed discovery plan submitted by the parties include one or two sentences stating the nature of the case.

7.     The written report must include the telephone numbers where the parties can be reached for this call.

8.     In addition, Judge Randa is participating in the Seventh Circuit Electronic Discovery Pilot Program and has adopted the <u>Principles</u>

- 6 -

Relating to the Discovery of Electronically Stored Information. Counsel should be fully prepared to discuss methods and techniques to accomplish cooperative fact-finding in their case at the initial status conference. Before the initial status conference, counsel must also meet and discuss the Principles Relating to the Discovery of Electronically Stored Information. At the initial status conference, counsel must be prepared to discuss what agreements they have reached regarding discovery of Electronically Stored Information ("ESI") and what area of disagreement they have with regard to discovery of ESI. After discussing the matter with counsel, the Court will determine whether to enter the Standing Order Relating to the Discovery of Electronically Stored Information in their particular case. (Please refer to Attachments B & C).

Dated at Milwaukee, Wisconsin, this 26th day of January, 2016.

BY THE COURT:

HON. RUDOLPH T. RANDA
U.S. District Judge

- 7 -